IN THE UNITED STATES DISTRICT COURT FOR
THE SOUTHERN DISTRICT OF WEST VIRGINIA

HUNTINGTON DIVISION

IN RE:

DENNIS RAY JOHNSON, II

    Debtor-in-Possession

PEOPLES BANK, N.A.,

        Plaintiff,

v.                                      CIVIL ACTION NO.   3:17-mc-180

DENNIS RAY JOHNSON, II,

        Defendants.

**MEMORANDUM OPINION AND ORDER**

Pending before the Court is Movant Dennis Ray Johnson, II's ("Johnson" or "Movant") Motion to Withdraw Bankruptcy Reference and Consolidate With District Court Civil Action ("Motion to Withdraw") (ECF No. 1). Movant requests that this Court withdraw the bankruptcy reference of an adversary proceeding between Plaintiff Peoples Bank N.A. ("Peoples Bank") and Defendant Johnson, Adversary Proceeding No. 16-3020 (the "Adversary Proceeding") in the United States Bankruptcy Court for the Southern District of West Virginia. Additionally, Movant requests that the Adversary Proceeding be consolidated with a civil action currently pending before this Court, Case No. 17-4220 (the "Civil Action"), filed by the Trustee for Johnson's estate and the estates of a group of business debtors owned wholly, or in substantial part, by Johnson (the "Coal Group"). The Adversary Proceeding occurred within the context of the bankruptcy proceedings for Johnson and the Coal Group. Peoples Bank opposes the withdrawal of the

reference, and contends that the Adversary Proceeding should properly remain with the bankruptcy judge. As explained below, the Court **DENIES** Johnson's Motion to Withdraw (ECF No. 1). The Adversary Proceeding **REMAINS REFERRED** to the Bankruptcy Court.

The facts of this case are neither simple, nor straightforward. The bankruptcy, Adversary Proceeding, and the Civil Action all arise out of a series of business deals gone wrong. Relevant to this motion, Johnson and Peoples Bank entered into a series of loan agreements. The central gist of these agreements was that Peoples Bank would loan Johnson millions of dollars to enter into, and expand his presence in the coal industry. Over the period of a few years, Peoples Bank lent Johnson and various Coal Group entities somewhere in the ballpark of $20,000,000. *See Peoples Bank Resp.*, ECF No. 2, at 3-4. Of course, as is common with loan arrangements, Johnson promised to pay back the money over time. However, the investments apparently did not flourish as the parties had likely expected, and Johnson eventually filed for bankruptcy protection.

Although Johnson and Peoples Bank had previously dealt with each other frequently, and had a close working and business relationship, the relationship between them hardened with the failure of the Coal Group and related investments. On December 30, 2016, Peoples Bank filed the Adversary Proceeding with the bankruptcy court. In that action, Peoples Bank objected to the discharge, and requested that the bankruptcy judge find that the debts owed by Johnson to Peoples Bank were non-dischargeable due to allegedly fraudulent actions taken by Johnson.[1] *Ex. 1 to Mot. to Withdraw*, ECF No. 1-3, at 1.

---

[1] Despite the parties' argument over the relative similarity, or lack thereof, between the Adversary Proceeding and the Civil Action, neither party attached the Adversary Proceeding Complaint or Answer to a filing before this Court. However, the Court takes judicial notice of the Adversary Proceeding Complaint, as is permitted. *See Philips v. Pitt Cty. Mem'l Hosp.*, 572 F.3d 176, 180 (4th Cir. 2009) ("In reviewing a Rule 12(b)(6) dismissal, we may properly take judicial notice of matters of public record.").

Similarly, the Civil Action filed by the Trustee, on Johnson's behalf, blames the failure of the Coal Group on Peoples Bank and other parties with which the bank worked. In the Complaint, the Trustee essentially claims that Peoples Bank fraudulently induced Johnson into entering into a forbearance agreement by withholding an appraisal and other information, thus precipitating the failure of the Coal Group. *See Johnson's Mem. in Supp. of Mot. to Withdraw*, ECF No. 2, at 4. In essence, the respective sides have placed the blame for the failure upon the allegedly wrongful and deceptive acts of the other party.

Upon those facts, Johnson argues that the withdrawal of the bankruptcy reference and consolidation with the Civil Action will promote judicial economy, prevent the potential for inconsistent results, and foster the economical use of both parties' resources. *See Johnson's Mem. in Supp. of Mot. to Withdrawal*, at 4; *Johnson's Reply*, ECF No. 4, at 1-2. At the heart of his argument, Johnson stresses the amount of factual and legal overlap involved in this case. *Id.* at 8-9. To illustrate the entanglement of the matters, Johnson has informed the Court that he "asserted in his Answer to the Complaint in the Adversary Proceeding that claims held by the Trustee [in the Civil Action] . . . constitute defenses to the Adversary Proceeding Complaint."[2] *Id.* at 4.

In its response, Peoples Bank largely glazes over the apparent overlap between the Adversary Proceeding and the Civil Action. Instead, Peoples Bank explains the insufficiency of Johnson's showing regarding the six factors adopted by courts in this District to determine whether to withdraw a bankruptcy reference. *See generally Peoples Bank Resp.* In doing so, Peoples Bank argues that withdrawal would hinder the judicial efficiency inherent in having the bankruptcy court consider matters within its expertise, such as the determination of whether Johnson's debt to Peoples Bank is properly dischargeable under the Bankruptcy Code.

---

[2] The Court, however, cannot confirm this assertion. *See supra* note 1.

These two actions have sprouted from the same series of business transactions, and thus overlap in various ways. The Court recognizes that this Motion presents a close call. However, the Court agrees with Peoples Bank that the Adversary Proceeding will require legal determinations within the bankruptcy judge's expertise, upon facts with which the he is quite familiar. As is further explained below, Johnson's Motion to Withdraw (ECF No. 1) is, therefore, **DENIED**.

In establishing Bankruptcy Code, Congress gave district courts original and exclusive jurisdiction over "all cases under [Title 11 of the United States Code, the Bankruptcy Code]." 28 U.S.C. § 1334(a). District courts also have original, but not exclusive, jurisdiction over "all civil proceedings arising under title 11, or arising in or related to cases under title 11." *Id.* § 1334(b). Although entrusted with that jurisdictional purview, district courts may permissibly refer bankruptcy matters to non-Article III bankruptcy judges automatically. *Id.* § 157(a). Indeed, district courts within this district automatically refer bankruptcy matters. *See* LR Civ P 83.13. However, this referral is not unalterable.

Just as it drew the jurisdictional boundaries for district courts concerning bankruptcy matters, Congress also provided a mechanism by which district courts could withdraw a reference to a bankruptcy court. "The district court may withdraw, in whole or in part, any case or proceeding referred [to a bankruptcy court], on its own motion or on timely motion of any party, for cause shown." 28 U.S.C. 157(d). Under this provision, so-called "permissive withdrawal," the district court may exercise its discretion in determining the appropriateness of withdrawal.[3] *See Mooring Capital Fund, LLC v. Sullivan*, No. 3:16-CV-74, 2016 WL 4628572, at *4 (N.D.W. Va. Sept. 6,

---

[3] The second sentence of 28 U.S.C. § 157(d) provides for conditions under which a district court must withdraw the reference from a bankruptcy court. *See Allen v. Nat'l City Mortg.*, No. 2:04-CV-188, 2006 WL 3899997, at *1 (S.D.W. Va. July 13, 2006) (Goodwin, J.). Because neither party examined or argued for the applicability of mandatory withdrawal, the Court does not address it.

2016). But courts have cautioned that this discretion should be afforded judicious and restrained use. *Hawaiian Airlines, Inc. v. Mesa Air Grp., Inc.*, 355 B.R. 214, 224 (D. Haw. 2006) (providing that the discretion to withdraw should be "employ[ed] [ ] judiciously in order to prevent [withdrawal] from becoming just another litigation tactic for parties eager to find a way out of bankruptcy court" (internal alterations original, but internal quotation marks omitted) (quoting *Kenai Corp. v. Nat'l Union Fire Ins. Co.*, 136 B.R. 59, 61 (S.D.N.Y. 1992))).

Although Congress permitted district courts to withdraw bankruptcy court references, it did not provide guidance on what satisfies the "cause shown" standard. So too, the Fourth Circuit has yet to clarify the practical requirements for that malleable two word phrase. *See Dwyer v. First Nat'l Bank (In re O'Brien)*, 414 B.R. 92, 97 (S.D.W. Va. 2009) (Goodwin, J.). But courts in this District have applied a six-factor framework, gleaned from a survey of other circuits, when deciding whether the "cause shown" standard has been met. *Id.* Those six factors are:

> (1) whether the proceeding is core or noncore; (2) the uniform administration of bankruptcy law; (3) the promotion of judicial economy; (4) the efficient use of the parties' resources; (5) the reduction of forum shopping; and (6) the preservation of the right to jury trial.

*Standish v. Jackson (In re Albertson)*, 535 B.R. 662, 667 (S.D.W. Va. 2015) (Goodwin, J.) (citation omitted). Generally, the most important factor is whether the matter is a core or noncore proceeding, but it is not determinative. *See id.* (citing *In re Coe-Truman Techs., Inc.*, 214 B.R. 183, 187 (N.D. Ill. 1997)). The movant bears the burden for demonstrating the requisite "cause" for permissive withdrawal under the six-factor framework. *Id.* (citing *Blue Cross & Blue Shield of N.C. v. Jemsek Clinic, P.A.*, 506 B.R. 694, 697 (W.D.N.C. 2014)).

Applying this analysis, the Court believes the factors, on balance, weigh against withdrawing the reference of the Adversary Proceeding. Concerning the first factor, the Court finds that Peoples Bank's claims, to the extent that the parties explained them to the Court, likely

constitute core proceedings. Generally, a bankruptcy judge has the duty to determine whether claims or issues before him or her fall within the core or noncore designation. *In re Minor Family Hotels, LLC*, No. 3:10-MC-00052, 2010 WL 5141342, at *3 (W.D. Va. Dec. 10, 2010). Despite Congress's identification of sixteen, non-exhaustive, categories of proceedings that are "core," the analysis for determining whether a proceeding is "core" is often fraught with nuance and complexity. *See Stern v. Marshall*, 564 U.S. 462, 474-78 (2011) (identifying that Congress designated categories of core proceedings, and engaging in the relevant analysis); *see also In re O'Brien*, 414 B.R. at 98, 102-03 ("The distinction between core and non-core issues is not always clear, especially in cases where state-law claims are precipitated by the financial dealings of a bankrupt debtor."). Cognizant of these potential difficulties, the Court believes that the bankruptcy judge would likely find that Peoples Bank's claims comfortably fit within the non-exhaustive list of core proceedings identified by Congress. Peoples Bank contends that all of its claims in the Adversary Proceeding request a determination that Johnson's debt is not dischargeable. *See Peoples Bank Resp.*, at 1. This fits neatly within one of the designated "core proceeding" categories. 28 U.S.C. § 157(b)(2)(I) (listing as one of the core proceedings, "determinations as to the dischargeability of particular debts"). Thus, the first factor weighs in favor of denying the withdrawal request.

The second factor, the uniform administration of bankruptcy law, also supports the denial of withdrawal request. Bankruptcy courts have the expertise and experience relevant to the determination of questions unique to bankruptcy law, such as the dischargeability of a debt. *See In re Albertson*, 535 B.R. at 668. Johnson correctly notes that, if successful, the claims pursued by the Trustee in the Civil Action constitute "the single largest potential asset [in the estate]." *Johnson's Reply*, at 3. However, that the Civil Action may significantly affect the assets in the

estate, and thus the later administration of bankruptcies, does not outweigh the benefits of having the bankruptcy judge decide the dischargeability of the entirety of Johnson's and the Coal Group's debt.

The third and fourth factors only slightly weigh in favor of withdrawing the reference, if at all. Withdrawal might promote some semblance of judicial economy, and may more efficiently utilize the parties' resources due to the streamlining of the factual development. It might also allow for simultaneous adjudication of the two sides of a substantially related transactional narrative. Certainly, keeping the Adversary Proceeding and the Civil Action separate may result in the duplication of discovery efforts and litigation expenses. However, some unnecessary costs would also occur if the Adversary Proceeding was withdrawn and the actions consolidated. It appears that the Civil Action, brought on behalf of roughly ten entities, against multiple defendants, involves more parties than the more limited Adversary Proceeding. Additionally, the Adversary Proceeding covers a lengthier factual period, and involves a broader transactional scope than that of the Civil Action Complaint. Thus, the consolidation of the two actions would likely require some non-involved parties to be a part of the Adversary Proceeding claims and issues. Also, the Adversary Proceeding was filed in December 2016. *See Ex. 3 to Johnson's Mot. to Withdraw*, at 1. Given that the Civil Action involves multiple parties, and complex causes of action, the Civil Action will likely necessitate an extended period to sort out. With the Adversary Proceeding already pending for a year and a half, the Court believes that withdrawing the reference would unduly delay the adjudication of the issues. On the whole, notwithstanding some potential, additional cost associated with withdrawal and consolidation, the third and fourth factors weigh slightly in favor of granting Johnson's request to withdraw the reference.

The Court has found no evidence of forum shopping, and thus that factor is irrelevant to this case.

Finally, the sixth, and last, factor, supports the bankruptcy judge's retention of the Adversary Proceeding. As mentioned, Peoples Bank's claims concern the dischargeability of certain debts owed by Johnson. This type of dischargeability determination claim does not entail the right to jury trial. *See M.C. Construction, Inc. v. Fink (In re Fink)*, 294 B.R. 657, 659 (W.D.N.C. 2003) ("After making the inquiry required by the *Granfinanciera* case, it is apparent that plaintiffs bringing dischargeability actions do not have the right to a jury trial with respect to any common law claims on which their claim of nondischargeability is based.")*; see also Matter of Hallahan*, 936 F.2d 1496, 1505 (7th Cir. 1991) (generally explaining that dischargeability questions do not provide a debtor a right to a jury trial, and declining to permit a jury trial). Therefore, because no right to jury trial is affected, this factor weighs in favor of not withdrawing the reference.

Ultimately, the "decision whether or not to withdraw the referral immediately is frequently more [of] a pragmatic question of efficient case administration than a strictly legal decision." *In re Albertson*, 535 B.R. at 670 (internal quotation marks omitted) (quoting *Official Comm. Of Unsecured Creditors v. Schwartzman (In re Stansbury Poplar Place, Inc.)*, 13 F.3d 122, 128 (4th Cir. 1993)). As a matter of pragmatism, and informed by the six-factor analysis, the Court will not permit the withdrawal of the Adversary Proceeding. Although Johnson's Motion to Withdraw does present viable reasons for withdrawal, the Court finds that, in this case, permitting the bankruptcy judge to determine Peoples Bank's dischargeability claims will permit the most efficient resolution to those claims. *See In re Pilipovic*, No. 4:15-CV-861-ERW, 2015 WL 7273325, at *3 (E.D. Mo. Nov. 18, 2015) ("In this case, it will preserve judicial resources and promote judicial economy if

the Bankruptcy Court has an opportunity to promulgate an opinion regarding whether [the creditor's] claims against [the debtor] have been discharged by the debtor's bankruptcy.") Accordingly, the Court **DENIES** Johnson's Motion to Withdraw (ECF No. 1), and **DIRECTS** the Clerk to **REMOVE** this case (No. 3:17-mc-180) from this Court's docket.

The Court **DIRECTS** the Clerk to send a copy of this Order to counsel of record and any unrepresented parties.

ENTER: May 1, 2018

ROBERT C. CHAMBERS
UNITED STATES DISTRICT JUDGE